UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIYAM AKMAL,<br><br>          Plaintiff,<br><br>    v.<br><br>CITY OF KENT, et al.,<br><br>          Defendants. | CASE NO. C13-0379JLR<br><br>ORDER OF DISMISSAL |

Before the court is Plaintiff Mariyam Akmal's fourth amended complaint (4th Am. Compl. (Dkt. # 61)), and Defendant Michael Alston's motion to dismiss (Mot. (Dkt. # 56).) Ms. Akmal is proceeding pro se and *in forma pauperis* ("IFP") in this action. (*See* Dkt.) Under 28 U.S.C. § 1915(e), district courts have authority to review IFP complaints and must dismiss them if "at any time" it is determined that a complaint is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(b)(1). The court has examined the complaint in this case in great detail and has concluded that dismissal under 28 U.S.C. § 1915 is appropriate at this

ORDER- 1

time. In prior orders, the court explained specific reasons for why Ms. Akmal has failed to state a claim against particular defendants. For related reasons, the court now concludes that Ms. Akmal's complaint is frivolous with respect to all defendants, fails to state a claim, and must be DISMISSED without prejudice.

## I.   BACKGROUND

Ms. Akmal filed this action on March 5, 2013, and has since amended her complaint four times. (*See* Compl. (Dkt. # 4); Am. Compl. (Dkt. # 27); 2d Am. Compl. (Dkt. # 43); 3d Am. Compl. (Dkt. # 53); 4th Am. Compl.) Ms. Akmal's five complaints are similar to one another. In each, she alleges a laundry list of civil rights violations against roughly 60 defendants, including the City of Kent, the Kent Police Department ("Kent Police"), and others such as Mr. Alston, the State of Washington, the State of Washington Department of Social and Health Services, Wells Fargo National Bank, the law firm of Puckett & Redford PLLC, and numerous John and Jane Doe defendants. (*See generally* 3d Am. Compl.) The crux of her allegations is that Kent Police and other public officials and private actors are engaged in a "civil conspiracy" against her. (*See* 2d Am. Compl. ¶ 34.) In connection with these allegations, she alleges violations of 42 U.S.C. § 1981, § 1985, § 1986, § 1988, both the United States and Washington Constitutions, and privacy torts. (3d Am. Compl. ¶ 17.) She seeks monetary, declaratory and injunctive relief. (*Id.* at 23.)

At the heart of Ms. Akmal's conspiracy allegations are claims that the Kent Police discriminated against her on the basis of religion, race, and gender. (*Id.* ¶ 18.) Ms. Akmal is an African-American Muslim. (*Id.*) She claims that Kent Police "repeatedly,

over a decade, refused to allow her to lodge crime reports," complaining that she has been "harassed both electronically and in real life, as well as stalked by a networked group of mostly anonymous individuals." (*Id.*)

Further, she claims that the City retaliated against her for attempting to lodge those complaints. She alleges that she gave her contact information to the City for investigatory purposes at the City Clerk's request. Subsequently, she claims that her complaints were not investigated and that the City used her personal information to stalk her and invade her private life. (*Id.* ¶ 33.) This included allegedly "entering her home while in her absence, taking items from her home, going through her personal correspondence, computers, etc. and then using this gleaned knowledge to anonymously stalk, track, and taunt her. . . ." (*Id.*) In addition to these searches, Ms. Akmal claims that she was threatened by agents of the City. (*Id.*) She states, "[t]o date, they continue to send her veiled threats of physical harm—'I can hurt you,' 'you know what they say about the squeaky wheel,' references to playing 'Cowboys & Muslims' but dipping the bullet in pig grease first . . . ." (*Id.*) Further, she claims that the Kent Police had her fired, stole money from her bank account, and painted her in a false light by disseminating a document containing her photograph and personal information to the City. (*Id.* ¶¶ 36, 37, 39.) She alleges that the Kent Police justified disseminating her information on the basis that she lawfully owns a firearm, creating issues of officer safety. (*Id.* ¶ 39.)

The court has previously granted several motions to dismiss. On March 13, 2014, the court granted Defendant Michael Alston's motion to dismiss, finding that Ms. Akmal

had not stated plausible claims against Mr. Alston. (*See* 3/13/14 Order (Dkt. # 52).) The City also moved to dismiss, and the court granted the City's motion, explaining in great detail why Ms. Akmal's claims against the city should not proceed. (4/24/14 Order (Dkt. # 57).)

Ms. Akmal recently amended her complaint for a fifth time. (*See* 4th Am. Compl.) In her new complaint, she elaborates on the theories contained in her old complaint. (*See id.*) For example, she explains the alleged role of "Jericho Specialized Entry Training, LLC, [which] provides sworn law enforcement officers and Military Special Forces/EOD personnel with the skills needed to pick and/or bypass locks, or perform other surreptitious breaching techniques in the course of their duties." (*Id.* ¶ 23.) She adds that "[f]or the Court or any of the defendants to try to deny that the various police agencies are not in touch with each other and do not have the ability to effortlessly maintain electronic surveillance on anyone they so choose *with or without a warrant, Constitutionally or not*, would be to deny in part that all of the funding they've been receiving all of these years since the attacks of 911 so that they can participate and prevail in the 'war on terror' that the money has been earmarked for has been wasted." (*Id.* ¶ 33.) Similarly, she seeks to bolster her allegations by reference to an attorney named Keith S. Labella, who "filed a lawsuit in Eastern District of New York in which he names the Federal Bureau of Investigations, USDOJ Office of Justice Programs, and the United States Department of Justice as defendants." (*Id.* ¶ 34.) In that lawsuit, Mr. Labella seeks to demonstrate that the government has knowledge of "the phenomenon of 'gang stalking.'" (*Id.* ¶ 35.) Ms. Akmal further alleges that "Wells Fargo employees

ORDER- 4

MacKenzie Dooley and Anthony Willabring located in Minnesota, and employees Rose Jackson and Timothy Brinkley, a convicted sex offender, arranged a lure, an altercation, a theft from her bank account which was all blamed on the Plaintiff resulting in monetary as well as other losses to the Plaintiff." (*Id.* ¶ 44.)

## II.  ANALYSIS

Dismissal under 28 U.S.C. § 1915 is appropriate if "at any time" it is determined that a complaint is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(b)(1). A complaint is "frivolous" if it has no basis in law or fact. *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). A complaint fails to state a claim upon which relief may be granted if it is not "plausible" or does not "plead a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim and survive a motion to dismiss, the complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (internal quotation marks omitted); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). The court is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as

factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). As the Supreme Court said in *Iqbal*, a complaint must do more than tender "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Ms. Akmal's complaint is frivolous and does not state a plausible claim for any of the relief she requests. As explained in detail in previous orders, her complaint suffers from numerous defects. For example, many of her causes of action are not related to the conduct she alleges. (*See, e.g.*, 4/24/14 Order at 6.) Equally problematic, Ms. Akmal "does not support her theor[ies] . . . with factually sufficient allegations showing the court that her entitlement to relief is 'above the speculative level.'" (*Id.* at 7 (citing *Twombly*, 550 U.S. at 555).) This is true not only with respect to her allegations against the City, Kent Police, and Mr. Alston, but with respect to her allegations against all defendants. For example, she alleges that "the Defendants have used 'national security' and the 'war on terrorism' as a pretext to circumvent her Fourth Amendment rights to security in her home, papers, effects, etc. by constant intrusions into her home, her mail, her electronic mail (email), electronic data stored by her internet service provider, etc." (4th Am. Compl. ¶ 90.) This is typical of Ms. Akmal's claims: she makes a broad allegation of wrongful action that the court is unable to in any way connect to the defendants in the case. Her allegations describe conduct that would be unlawful and wrongful if true, but the non-conclusory facts she alleges allow only a speculative inference that defendants are liable for that conduct, or indeed engaged in that conduct at all.

Ms. Akmal's retaliation claims also illustrate the problems presented by her complaint. As the court previously explained:

> [Ms. Akmal] asserts that soon after she left her name and phone number with the City Clerk, "they" began "entering her home, going through her personal correspondence, [and] computers" and sending her "veiled threats of physical harm- 'I can hurt you,' 'you know what they say about the squeaky wheel,' references to playing 'Cowboys and Muslims'" and left "an empty shell case" in her vehicle. (3d Am. Compl. ¶ 33.) Although such harms might give rise to a cause of action, she does not allege facts showing the court that "they" is the City. Ms. Akmal alleges only that certain events occurred and that she personally believes the City committed those harms. Ms. Akmal's speculative belief that the City harmed her does not move her allegations from conceivable to plausible. *See Twombly*, 550 U.S. at 555. It is merely a conclusion that is not entitled to a presumption of truth. *Id.*
>
> The same is true for Ms. Akmal's claim that the City had her fired. (3d Am. Compl. ¶ 36.) She asserts that whenever she went over the police's head to lodge a complaint, she would suffer a "major loss of a necessity." (*Id.*) The fact that two events occurred within a relatively short time frame does not allow the court to draw a causal relation implicating retaliation by the City. Without showing why her lodging a complaint and losing her job are connected, Ms. Akmal does not allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. Because Ms. Akmal does not allege sufficient facts implicating the City for the harms associated with her general theory of liability, she does not state a claim for relief arising from those events.

(4/24/14 Order at 9.) The same is true of her allegations against the other parties in this action. She alleges that certain Wells Fargo employees stole money from her account and blamed her for it, also calling her "rude," but her allegations in this regard are far too conclusory and threadbare to draw more than a speculative inference that the Wells Fargo employees in question stole money from Ms. Akmal. (*See* 4th Am. Compl. ¶ 44.)

For other claims, Ms. Akmal simply fails to plead the requisite elements. As the court explained in its previous order, Ms. Akmal does not allege the necessary elements

for causes of action like defamation or constitutional claims under 28 U.S.C. § 1983. (4/24/14 Order at 8-10.)  This is a common theme in Ms. Akmal's complaint.  Ms. Akmal appears to have pleaded numerous causes of action without regard to whether her allegations actually supported the asserted claims.

The final common theme throughout Ms. Akmal's complaints is an allegation that officials at both the local and national level failed to investigate her claims.  (*See* 4th Amend. Compl. ¶¶ 26, 32, 50.)  There is, however, no constitutional right to police protection.  *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196-97 (1989) ("[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual . . . .  Although the liberty protected by the Due Process Clause affords protection against unwarranted *government* interference . . . , it does not confer an entitlement to such [governmental aid] as may be necessary to realize all the advantages of that freedom.") (internal quotations and citations omitted); *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("It is well established that there is no constitutional right to be protected by the state against being murdered by criminals or madmen.") (internal quotations and citations omitted).  Accordingly, though Ms. Akmal repeatedly alleges harms associated with the government's refusal to investigate her claims, she does not allege a plausible claim for relief based on these harms.  *See Knapp*, 738 F.3d at 1109.

ORDER- 8

For all of these reasons, the court finds that Ms. Akmal's complaint is frivolous, i.e., "without basis in law or fact," *see Knapp*, 738 F.3d at 1109, and fails to state a claim on which relief may be granted.  Consequently, the court DISMISSES this complaint with respect to all defendants pursuant to its authority under 28 U.S.C. § 1915.

The court also denies any further leave to amend.  Ms. Akmal has already amended her complaint four times.  It is difficult to imagine what good it would do to permit further amendments.  Leave to amend is mandatory for pro se plaintiffs unless it is absolutely clear that amendment could not cure the defects.  *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).  Here, that standard is met.  It is absolutely clear that allowing Ms. Akmal to amend her complaint for a fifth time would not cure the defects the court has identified therein.

### III.   CONCLUSION

This case is dismissed with respect to all claims against all parties.  The clerk of the court is DIRECTED to close this matter.

Dated this 6th day of May, 2014.

JAMES L. ROBART
United States District Judge